IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MANUEL G. DÍAZ,<br>**Petitioner,**<br>v.<br>POPULAR SECURITIES, LLC,<br>**Respondent.** | CIVIL NO. 19-1065 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Before the Court are Petitioner Manuel G. Díaz's ("Petitioner") Amended Petition to Vacate Arbitration Award, Docket No. 12; and Respondent Popular Securities LLC's ("Respondent") Opposition and Cross-Motion to Confirm the Award, Docket Nos. 13; 7. Petitioner opposed the cross-motion to confirm the award. Docket No. 30. Respondent replied and Petitioner sur-replied. Docket Nos. 33; 34. For the reasons below, the request to vacate the award is **DENIED** and the cross-motion to confirm the award is **GRANTED**.

**BACKGROUND**

On September 13, 2015, Petitioner filed a statement of claim for a dispute-resolution arbitration against Respondent before the Financial Industry Regulatory Authority ("FINRA"). Docket No. 12-2. Petitioner claimed economic damages for, *inter alia*, fraud, fault, tort, and breach of a broker-dealer agreement under the Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b); the Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5; and the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31 §§ 3018, 3404, 3408.

On October 24, 2018, after twenty hearing sessions, the panel of arbitrators (the "Panel") concluded: "1. Claimant's claims are denied in their entirety. 2. Other than forum fees which are specified below, the parties shall each bear their own attorneys' fees, costs and expenses incurred in this matter. 3. Any and all claims for relief not specifically addressed herein are denied." Docket No. 12-12 at 3. The Panel specifically stated that it "rendered a decision on the merits," thus making Respondent's motion to dismiss on statute of limitation grounds "moot." *Id.* at 2.

On January 22, 2019, Petitioner filed the instant petition to vacate the arbitration award. Docket No. 1. On March 5, 2019, Respondent answered and cross motioned to confirm the award. Docket No. 7. On May 15, 2019, Petitioner went on to file an amended petition to vacate the award. Docket No. 12. Petitioner argues that Respondent procured the award by fraud on the Panel, and that the arbitrators failed to disclose certain material facts incurring, thus, in evident partiality and misbehavior. *Id.* at 6-8. On May 29, 2019, Respondent reiterated the arguments in its first answer and cross-motion, namely that the there was no fraud, partiality, or misbehavior in relation to the award. Docket No. 13 at 7. Petitioner opposed Respondent's cross-motion, Docket No. 30; to which Respondent replied, Docket No. 33; and Petitioner sur-replied, Docket No. 34.

## STANDARD OF REVIEW

Petitioner alleges the award should be vacated under the Puerto Rico Arbitration Act ("PRAA"), P.R. LAWS ANN. tit. 32, § 3222; and Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. Docket No. 12 at 7.[1] The PRAA is modeled after the FAA and tracks its

---

[1] Dispersed throughout his brief, Petitioner loosely adds the "manifest disregard of the law" standard as a ground to vacate the arbitration award. *See, e.g.*, Docket No. 12 at 17-18, 31. Nevertheless, the brief contains no supporting argument or specific facts that would justify applying said ground here. Therefore, the Court will not consider the argument. *See Ortiz Espinosa v. BBVA Sec. of P.R., Inc.*, 2015 WL 12828169, *5 n.13 (D.P.R. Dec. 17, 2015), aff'd, 852 F.3d 36 (1st Cir. 2017) (rejecting insufficiently developed argument in unsuccessful action to vacate award). Even more, the

language closely, as many of its provisions are translations of the FAA. *See Universal Ins. Co., Inc. v. Warrantech Consumer Prod. Servs., Inc.*, 849 F. Supp. 2d 227, 236 (D.P.R. 2012) (citations omitted). Given the similarities between both statutes, the Court's reasoning here applies to Petitioner's arguments under both the FAA and PRAA. *See* Jorge A. Garcia, *Commercial Arbitration in Puerto Rico After Hall Street*, 87 REV. JUR. UPR 236, 242 (2018) (vacatur grounds in the PRFAA are "almost-literal replica of the corresponding grounds in the FAA.").

The FAA embodies a national policy favoring arbitration; contains a narrow set of statutory grounds to vacate, modify, or correct an award; and provides enforcement mechanisms for these types of actions. *See Hall Street Assocs. v. Mattel*, 552 U.S. 576, 581-82 (2008). Review of arbitral decisions is "extremely narrow and exceedingly deferential." *Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 123 (1st Cir. 2008) (quoting *Airline Pilots Ass'n, Int'l v. Pan Am. Airways Corp.*, 405 F.3d 25, 30 (1st Cir. 2005)). "Nevertheless, there are limits to that deference." *E. Seaboard Const. Co., Inc. v. Gray Const., Inc.*, 553 F.3d 1, 3 (1st Cir. 2008) (citing *Kashner Davidson Secs. Corp. v. Mscisz*, 531 F.3d 68, 70 (1st Cir. 2008)). In relevant part, Section 10(a) of the FAA provides specific grounds for vacating awards, authorizing vacatur

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

---

Court refuses "to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . Judges are not expected to be mind-readers." *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also UMass Mem'l Med. Ctr., Inc. v. United Food and Commercial Workers Union*, 527 F.3d 1, 6 (1st Cir. 2008) (cleaned up).

Nevertheless, "[e]ven if the court is convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, arbitration awards must be confirmed." *Colon-Vazquez v. El San Juan Hotel & Casino*, 483 F. Supp. 2d 147, 152-53 (D.P.R. 2007) (quotation marks and citation omitted).

## ANALYSIS

### I. Procurement by Corruption, Fraud, or Undue Means Under Section 10(a)(1)

The First Circuit has yet to address the meaning of "corruption" and "fraud" under Section 10(a)(1) of the FAA. *See Domnarski v. UBS Fin. Servs., Inc.*, 919 F. Supp. 2d 183, 187-88 (D. Mass. 2013). Nonetheless, courts in this district have used the definition of "undue means" to shed light on the meaning of "fraud." *Id.* at 187 (citing *Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 499 (1st Cir. 2005). "The best reading of the term 'undue means' under the maxim *noscitur a sociis* is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either." *Nat'l Cas. Co*, 430 F. 3d at 499 (citations omitted).

Similarly, other circuit courts have adopted various requirements for a party to show "fraud" on an arbitrator, namely that a party demonstrate: "(1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration." *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Servs., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003

(citations omitted); *see also Forsythe Intern., S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990) (applying same standard); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988) (same); *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982) (same). In *Sleeper Farms v. Agway, Inc.*, a fellow district court in this Circuit adopted part of these requirements, refusing to vacate an award because the petitioner failed "to establish fraud by clear and convincing evidence" and there was no evidence that the fraud was "not discoverable upon the exercise of due diligence [] during the arbitration." 460 F. Supp. 2d 184, 187 (D. Me. 2006) aff'd, 506 F.3d 98 (1st Cir. 2007).

From what the Court can decipher from Petitioner's convoluted brief, Petitioner posits that Respondent "knowingly and recklessly made [several] false arguments to the Panel" to procure the arbitration award.[2] Docket No. 12 at 30. Petitioner alleges that Respondent lied about the following legal contentions: (1) the securities-related claims were time-barred by the Puerto Rico Uniform Securities Act ("PRUSA") or the federal Securities Exchange Act's ("SEA") two year statute of limitations; (2) the state law claims were not actionable because Petitioner did not provide a contract or identify a contractual provision that Respondent allegedly breached; and (3) the tort and contract fraud claims were also subject to PRUSA or SEA's statute of limitations. *Id.* at 16-19, 30-31.

Petitioner supports his "fraud on the Panel" theory by citing three excerpts from the arbitration hearing's transcripts in which the Panel asked questions regarding the applicable

---

[2] The Court notes that Petitioner's brief is filled with unsupported and generalized assertions, devoid of specific evidence to support the "fraud on the panel" claim and lacking specific connection between the legal claims and the factual backdrop it recounts. *See Zannino*, 895 F.2d at 17 ("[I] issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Nonetheless, even if all arguments had been properly briefed, Petitioner still fails to prove procurement by fraud.

statute of limitations. *Id.* at 17-19. In doing so, what Petitioner really intends is for this Court to determine that the legal theories invoked by Respondent in the arbitration were meritless. Not only is this beyond the Court's ordinary arbitration review capacity, but Petitioner has also failed to show that Respondent engaged in any form of fraud altogether. *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 932 F.3d 1, 9 (2019) (cleaned up) ("[L]imited review applies [e]ven where [a factual or legal] error is painfully clear, [because] courts are not authorized to reconsider the merits of arbitration awards.").

First, the record is devoid of clear and convincing evidence illustrating how Respondent committed fraud or used undue means when arguing that Petitioner's claims were untimely under PRUSA and SEA. The transcript excerpts cited by Petitioner simply show that Respondent posed this legal theory before the Panel, and that the arbitrators asked several questions to better understand the statute of limitations' issue. Docket No. 12 at 17-19. Furthermore, Respondent reasonably presented its arguments by citing both persuasive and binding case law in its pre-hearing briefs. Docket No. 12-10 at 1-3. And regardless of whether Respondent's legal theories were correct, the Court is in no position to conclude that Respondent engaged in fraud simply because it zealously argued its case based on relevant jurisprudence. *PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship*, 187 F.3d 988, 991 (8th Cir. 1999) ("Undue means does not include sloppy or overzealous lawyering.") (cleaned up); *see also Dialysis Access Ctr., LLC*, 932 F.3d at 9 ("[C]ourts are not authorized to reconsider the merits of arbitration awards.") (cleaned up). The fact that Petitioner does not agree with Respondent's legal theories is not a basis for vacatur. *See P.R. Ports Auth. v. Misener Marine Const., Inc.*, 233 F. Supp. 2d 266, 268 (D.P.R. 2002).

Second, both the record and the award itself show that the Panel issued the decision on the merits, disregarding the statute of limitations argument and evaluating both Parties' contentions in full before ultimately dismissing Petitioner's claim. Docket No. 12-12 at 2. Petitioner's own account of the FINRA proceedings admits that the Panel "rendered a decision on the merits, rendering th[e] Motion [on the statute of limitations issue] moot." Docket No. 12 at 31. Even if Respondent misrepresented his statute of limitations theory, or the preclusive effect of the cited securities laws, said misrepresentations were immaterial because the arbitration award disregarded the timeliness argument presented by Respondent. *See also Prudential Bache Sec., Inc. v. Tanner*, 72 F.3d 234, 240 (1st Cir. 1995) ("[W]hen the arbitrators do not give their reasons [for the award], it is nearly impossible for the court to determine whether they acted in disregard of the law.") Similarly, Petitioner fails to show how Respondent's other arguments regarding, for example, Petitioner's failure to identify a breach of a fiduciary duty or contract obligation, are fraudulent means of procuring an award. As such, Petitioner fails to show "some causal relation" between the alleged "undue means and the arbitration award." *PaineWebber Grp., Inc.*, 187 F.3d at 994; *MCT Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010) (denying vacatur due to "failure to establish that [the fraud] led to the procurement of the award.").

Third, due diligence would have prompted discovery of the alleged fraud prior to the arbitration. Respondent presented its statute of limitation and preclusion arguments in its pre-hearing briefs, and Petitioner had the opportunity to counter such arguments several times, which he did. Docket Nos. 12-4; 12-7; 12-10; 12-11. Despite this, Petitioner did not allege any form of fraud or undue means before the Panel, not even when the arguments were reiterated during the arbitration. In any case, the Panel sided with Respondent's properly supported theories. *P.R. Ports Auth.*, 233 F. Supp. 2d at 268 ("While plaintiff's own legal analysis may very well be correct or

preferable to the arbitrators', this is not sufficient grounds for the court to vacate or modify the award . . . a mere mistake of law by an arbitrator cannot serve as the basis for judicial review.").

As such, Petitioner's fraud on the panel claim under Section 10(a)(1) is **DENIED**.

## II. Evident Partiality Under Section 10(a)(2)

Under Section 10(a)(2), "evident partiality" requires "more than just the appearance of possible bias." *JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003). "Rather, evident partiality means a situation in which a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration." *Id.* (quotation marks and citations omitted). The burden of establishing partiality rests upon Petitioner. *Id.* "A party seeking to set aside an award on the basis of evident partiality must show that the alleged partiality is or was direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Ameriprise Fin. Servs., Inc. v. Brady*, 325 F. Supp. 3d 219, 225 (D. Mass 2018) (quotation marks and citation omitted). Absent exceptional circumstances, a court "will not entertain a claim of personal bias where it could have been raised at the arbitration proceedings but was not." *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 13 (1st Cir. 1989); *see also Early v. E. Transfer*, 699 F.2d 552, 558 (1st Cir. 1983).

Petitioner alleges that one of the arbitrators, A.J. Seier ("Mr. Seier"), failed to disclose he resigned from his position as circuit judge for the state of Missouri in 1993 after allegations that he made false claims to obtain monetary reimbursement for travel receipts totaling $1,200.00, and that this omission demonstrates dishonesty and bias as to this arbitration. Docket No. 12 at 34-35. Similarly, Petitioner alleges that another arbitrator, Clarence B. Johnson ("Mr. Johnson"), failed to disclose that he filed for bankruptcy, which Petitioner argues shows Mr. Johnson's

"inability to manage his own assets;" and that his company, Johnson Wealth Management Inc., formerly served as financial advisor for Wells Fargo Advisors LLC, which created a "material conflict of interest" as to this arbitration. *Id.* at 35, 37.

At the outset, it is undisputed that the issue of partiality was not raised during the arbitration. At the very least, "Petitioner should have conducted due diligence in ranking and striking potential arbitrators." Docket No. 13 at 17. The circumstances surrounding Mr. Seier's resignation as circuit judge were made public as far back as December 2015 and, on April 2017, Mr. Seier amended his arbitration disclosures to make reference to the news article that talked about his resignation. Docket No. 12-14 at 2. Had Petitioner engaged in adequate due diligence, through a simple Google Search or by carefully reading the amended disclosures, he would have learned of this issue and he should have raised it during the arbitration proceedings. Instead, Petitioner was notified of the selection of the members of the Panel as early as February 2016 and he still accepted the Panel's composition on more than one occasion. Docket Nos. 13-4; 13-5; 13-6; 13-7.

The same applies for Mr. Johnson, whose initial disclosures did mention (1) his past association with Johnson Wealth Management Group, Inc., a company that publicly acknowledges providing services to Wells Fargo Advisors LLC, who in turn made transactions with Petitioner in 2001; and (2) the fact that he filed for bankruptcy, which is not only irrelevant to this case, but is also a matter of public knowledge that could have been easily discovered and verified. Docket No. 12-20 at 1-2. The previous findings alone would lead to dismissal of Petitioner's Section 10(a)(2) evident partiality claim.[3]

---

[3] To make matters worse, Petitioner falls short of excusing his failure to raise partiality by insufficiently alleging that he only learned of Mr. Johnson's omission after the hearings took place, and that if Mr. Seier had disclosed his

In any case, Petitioner still fails to show evident partiality as "it is not enough to identify some remote connection between the arbitrator and one of the parties; again, the standard is whether 'a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration.'" *ALS & Assocs., Inc. v. AGM Marine Constructors, Inc.*, 557 F. Supp. 2d 180, 183 (D. Mass. 2008) (quoting *JCI Commc'ns, Inc.*, 324 F.3d at 51); *Al Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996) ("[T]he claimant must establish specific facts that indicate improper motives on the part of an arbitrator.").

Here, nothing in the record shows that Mr. Seier's failure to disclose his resignation as a circuit judge demonstrates personal connection or bias towards any of the Parties. *Ameriprise Fin. Servs., Inc.*, 325 F. Supp. 3d at 226. Moreover, neither Mr. Seier's resignation more than 20 years prior to the arbitration nor the substance of the allegations that led to his resignation are of relevance to the case at bar or "materially relate" to any of the Parties. *See, e.g.*, *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 646-47 (9th Cir. 2010) (finding that "evidence of alleged corruption at some time in the past does not relate to this case or the parties to it, nor does it raise a reasonable impression of corruption in the present case.") (quotation marks omitted). The same conclusion applies to Mr. Johnson's alleged failure to disclose his bankruptcy or that his company formerly served as financial advisor for Wells Fargo Advisors LLC. These are merely "general allegations," which fail to show that Mr. Johnson had any personal connection with the

---

bankruptcy in his profile, he "would have stricken him in the arbitrator section process." Docket No. 12 at 34. Not only does this fail to explain why it took him so long to learn this information, but it ignores his duty to perform due diligence. Moreover, said allegations are woefully insufficient for an evident partiality claim considering that the record shows that the information was available prior to the arbitration. *Ameriprise Fin. Servs., Inc.*, 325 F. Supp. 3d at 225; *see also Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 646 (9th Cir. 2010) (declining "to create a rule that encourages losing parties to challenge arbitration awards on the basis of pre-existing, publicly available background information on the arbitrators that has nothing to do with the parties to the arbitration.").

case at bar—for example, whether he was directly involved with certain asset purchase transactions between Respondent and Wells Fargo Advisors LLC in 2011—, much less how or why Mr. Johnson was materially biased in favor of Petitioner. *Ameriprise Fin. Servs., Inc.*, 325 F. Supp. 3d at 226 ("general allegations" were deemed insufficient to establish personal connection).[4]

Petitioner also argues that the arbitrators' line of questioning and comments at the hearings demonstrated evident partiality in favor of Respondent. Docket No. 12 at 5. Not only are these speculative conjectures, but Petitioner has failed to identify any part of the transcript that would put a "reasonable person" in a position to conclude that a personal connection existed between the arbitrators and Respondent.[5] *JCI Commc'ns, Inc.*, 324 F.3d at 51. There is nothing "direct" or "definite" in the transcript excerpts cited and, at best, Petitioner shows mere "appearance" of partiality, which is insufficient to justify a vacatur. *Id.*; *see also Ortiz-Espinosa*, 852 F.3d at 49.

As such, Petitioner's evident partiality claim under Section 10(a)(2) is **DENIED**.

## III. Arbitrator Misbehavior Under Section 10(a)(3)

Additionally, Petitioner seems to rehash the allegations behind his "evident partiality" claim to also argue arbitrator misbehavior pursuant to Section 10(a)(3). To paraphrase, Petitioner argues that the Panel's failure to disclose the referenced professional and personal facts prevented a fair proceeding. Docket No. 12 at 36. Petitioner is wrong.

---

[4] *Compare with Ortiz-Espinosa v. BBVA Sec. of P.R., Inc.*, 852 F.3d 36, 49 (1st Cir. 2017) (cleaned up) (analyzing an arbitrator statement that "if I were [defendants' counsel], I would have a sore throat from objection for irrelevancies," and finding that "this hardly supports the existence of bias, and without more, claimants have not established specific facts that indicate motives on the part of an arbitrator."). The facts alleged to demonstrate bias in said case are more controversial than the ones in the case at bar, yet the First Circuit found no reason to revoke the confirmation of the award.

[5] Petitioner's citations to the transcripts merely show that the Panel asked several questions regarding the applicable statute of limitations. *See* Docket No. 12 at 15-17.

The FAA allows a court to vacate "where the arbitrators were guilty [] of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). As such, under Section 10(a)(3), vacatur is appropriate when the arbitrator's misbehavior affects a party's rights in a way that "deprive[s] [him or her] of a fair hearing." *Nat'l Cas. Co.*, 430 F.3d at 497 (citing *Hoteles Condado Beach, La Concha & Convention Ctr.* v. *Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985)). A "fair hearing" requires "an opportunity to present relevant evidence and arguments." *Doral Fin. v. Garcia-Velez*, 725 F.3d 27, 32 (1st Cir. 2013) (citing *Raytheon Co. v. Automated Bus. Sys., Inc.*, 882 F.2d 6, 8-9 (1st Cir. 1989)).

A petitioner's showing of an "imperfect disclosure" by a FINRA arbitrator does not automatically prove prejudice or preclusion of a fair hearing. *UBS Fin. Servs. Inc. v. AEELA*, 419 F. Supp. 3d 266, 284-85 (D. Mass. 2019); *see also Bangor Gas Co., LLC v. H.Q. Energy Servs. (U.S.) Inc.*, 695 F.3d 181, 192 (1st Cir. 2012) (noting that prejudice is "a requirement for vacating an award under [S]ection 10(a)(3)."). In fact, a failure to disclose that constitutes "misbehavior" under Section 10(a)(3) would likely also reflect "evident partiality" under Section 10(a)(2). *UBS Fin. Servs. Inc.*, 419 F. Supp. at 284-85; *see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (noting that insufficient disclosure may fall under Section 10(a)(3) instead of Section 10(a)(2), depending on the nature of the undisclosed facts).

Here, for the same reasons that Petitioner has failed to show evident partiality, the Court finds that the arbitrators' alleged failure to disclose does not constitute misbehavior. In other words, because Petitioner failed to show (1) that the arbitrators omitted material information, and (2) how the arbitrators' alleged omissions resulted in partiality—let alone partiality that

would affect the occurrence of a fair trial—, misbehavior under Section 10(a)(3) has not been established. Not only this, but Petitioner specifically fails to show how the arbitrators' alleged omissions made him unable "to present relevant evidence and arguments," stripping him of the opportunity of a "fair hearing." *Doral Fin.*, 725 F.3d at 32; *Nat'l Cas. Co.*, 430 F.3d at 497.[6]

As such, Petitioner's claim under Section 10(a)(3) is **DENIED**.

## IV. Attorney's Fees

The Court may impose an appropriate sanction upon the attorney, law firm, or party that has violated subdivision (b) of Federal Rule of Civil Procedure 11. "Rule 11(b) proscribes not only written arguments made with any improper purpose, but also advancing frivolous arguments, as well as the assertion of factual allegations without evidentiary support or the likely prospect of such support." *Rivera Feliciano v. State Ins. Fund Corp.*, 652 F. Supp. 2d 170, 187 (D.P.R. 2009) (quoting *Citibank Glob. Mkt., Inc. v. Rodriguez-Santana*, 573 F.3d 17, 32 (1st Cir. 2009)). Moreover, "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct alleged to violate subdivision (b)." Fed. R. Civ. P. 11(c)(2). Rule 11 also contains a "safe harbor" provision that requires movants to first serve the motion for sanctions on opposing counsel, and only present such motion to the court if the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected within twenty-one days after service of the motion. *Id.*

---

[6] To illustrate, in *UBS Fin. Servs. Inc.*, a district court in this Circuit entertained similar arguments and proceeded to determine that the disclosure omissions did not allow for vacatur under the misbehavior standard because petitioner did not meet its burden of showing "that it suffered any prejudice at the hearing itself as a result of [the] misconduct." 419 F. Supp. at 284-85. The same happens here.

The Court finds that Respondent has not shown that it complied with the safe harbor provision. Fed. R. Civ. P. 11(c)(2). This omission is fatal. *See Lamboy-Ortiz v. Ortiz-Vélez*, 630 F.3d 228, 244 (1st Cir. 2010) (reversing imposition of Rule 11 sanctions because the moving party failed to serve the motion "on opposing counsel at least twenty-one days prior to filing with the court so as to provide the adversary time to withdraw."). In addition to not properly serving Petitioner with the required motion, the form of its request is also defective. *See Rivera-Feliciano*, 652 F. Supp. 2d at 188. Respondent inserted its request for sanctions in the answer to Petitioner's request for vacatur instead of filing a separate motion. *See* Docket Nos. 7 at 18-19; 13 at 18-19.

Similarly, 28 U.S.C. § 1927 ("Section 1927") allows a court to sanction any "attorney or other person admitted to conduct cases in any court of the United States or any Territory who so multiplies the proceedings in any case unreasonably and vexatiously by requiring that specific actor to pay reasonable attorneys' fees." *See also Top Entm't v. Torrejon*, 351 F.3d 531, 534 (1st Cir. 2003). Respondent does not develop its Section 1927 claim, failing to adequately support how Petitioner "multiplied the proceedings" or acted "vexatiously" in accordance with Section 1927. Hence, the Court may and will disregard this request without further consideration. *Zannino*, 895 F.2d at 17. Even more, Respondent's petition is unaccompanied by detailed fee schedules or time sheets, which prevents the Court from determining reasonable attorneys' fees through the "lodestar" method. *See United States v. Nesglo, Inc.*, 744 F.2d 887, 892 (1st Cir. 1984); *Roosevelt REO PR Corp. v. Toledo-Garcia*, 2018 WL 3249251, *3 (D.P.R. July 3, 2018).

As such, Respondent's requests for sanctions under Rule 11 and Section 1927 are **DENIED.**

**CONCLUSION**

For the reasons stated, Petitioner's request to vacate is **DENIED** and the arbitration award **CONFIRMED**. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Wednesday, March 31, 2021.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
SENIOR U.S. DISTRICT JUDGE